(117 So. 452)

No. 28659.

### Succession of GILMORE.

May 7, 1928.   Rehearing Denied June 4, 1928.

Thomas Gilmore, of New Orleans, for appellant J. C. Gilmore.

Suthon, Zengel & Daigle, of New Orleans, for appellants Mrs. Hugh Gilmore and others.

Frank T. Doyle and Edward Dinkelspiel, both of New Orleans, for appellees Catherine Welker, Elizabeth Nebel, and Chas. Fincke.

Philip Gidiere and Warren V. Miller, both of New Orleans, for appellees Harry Marchiz and Nathan Reiner.

BRUNOT, J.   On January 13, 1921, and on January 17, 1921, Hugh Gilmore, on the first-named date, and his daughters, Mrs. Catherine Welker, Mrs. Elizabeth Nebel, and Mrs. Julia Fincke, on the last-named date, by acts under private signature, constituted S. L. Jacobs, realtor, their agent, for 30 days, with power and authority during that time to lease, for a term of 10 years, the property No. 222–224 South Rampart street, between Gravier and Common streets, Square Dryades, in the city of New Orleans, owned by said appearers in indivision.   In the act signed by Hugh Gilmore, the monthly rental for the property is fixed at $250.   In the act signed by his daughters, the monthly rental is fixed at $300, payable monthly.   In both acts the tenant is required to make all improvements and repairs at his own expense, and the agent of the owners is authorized to give the tenant the option of buying the property during the term of the lease for $50,000.   There were other conditions imposed upon the tenant relative to the tenant's payment of all taxes assessed against the property on a valuation in excess

of $18,000, and requiring the tenant to make a cash deposit, to be forfeited in the event of the nonperformance of the agreement.

On January 21, 1921, S. L. Jacobs, acting for his principals, leased the property at No. 222–224 South Rampart street to Harry Marchiz and Nathan Reiner for 10 years, commencing October 1, 1921, for a monthly rental of $300, payable monthly, and the lessees executed and delivered to Jacobs 120 rent notes, each for said sum, and payable according to the terms of the lease. The lease contains all of the clauses usually found in instruments of its character. An addenda to the lease, which is made a part thereof, contains several provisions, one of which grants to the lessees the privilege to make alterations to the building, provided the alterations do not deteriorate the value of the premises; another obligates the lessees to reimburse the lessors any taxes paid by them on an assessment of the property in excess of $18,000; a third provides for a cash payment by the lessees of $1,000, as a further consideration for the lease and for an option granted therein to lessees to purchase the leased property, during the term of the lease, for $50,000, but providing that the lessees' right to demand title to the property should not be enforceable until the termination of the ·lease, unless a transfer of the property to lessees pending that date is acceptable to the owners.

▪▪ The judgment in Succession of Gilmore, 154 La. 105, 97 So. 330, is res judicata as to the binding effect of Mr. Gilmore's ratification of the said lease and of the lessees' rights thereunder. In that case, Justice Land, the organ of the court, said:

"An unauthorized contract of an agent is ratified by the principal, who, when notified of such contract, does not immediately repudiate it, but accepts the benefit arising under such contract. Ward v. Warfield, 3 La. Ann. 468; Flower v. Downs, 6 La. Ann. 540; Szymanski v. Plassan, 20 La. Ann. 92, 96 Am. Dec. 382; Mangum v. Bell, 20 La. Ann. 215; R. C. C. art. 3010.

"The lease on these stores is therefore valid

through ratification and is binding upon plaintiff, who has assumed the inconsistent position in this case of demanding the delivery of these notes to him, and, at the same time, attacking their validity for want of authority upon the part of the agent securing their execution."

After the judgment quoted from supra became final, Mr. Gilmore died, testate; his will was probated, and the executor named therein was appointed and qualified. The property involved in this action belonged to the community of acquêts and gains existing between the deceased and his first wife, predeceased, and the surviving children of the deceased were the issue of that marriage. As the forced heirs of their deceased mother, they had previously been recognized as owners and were sent into possession of her community one-half of the property, and as the forced heirs and legatees of their deceased father they became the owners of two-thirds of his estate, the remaining one-third thereof being disposed of by the special bequests of the testator.

Some time after the executor named in the will of the deceased qualified, Mrs. Julia Gilmore, wife of Clark Fincke, died testate, constituting her husband her universal legatee, and bequeathing him all the property of which she died possessed.

On January 24, 1927, the two surviving daughters of Mr. Gilmore, deceased, and Clark Fincke, the surviving husband and universal legatee of Mrs. Julia Gilmore, deceased, filed a rule, in the civil district court, upon the testamentary executor of the succession of Mr. Gilmore, deceased, to show cause why the executor should not be ordered to sell the property described in the lease executed by S. L. Jacobs, agent, to Harry Marchiz and Nathan Reiner, for $50,000, according to the terms of the lease and the option to purchase granted to said lessees therein.

The executor excepted to the rule upon the grounds, viz. that the citation upon him was defective, that the judgment in the Succession

of Mrs. Elizabeth Clark Gilmore, 154 La. 105, 97 So. 330, is res judicata of the community interest of her surviving husband in the property, and that the plaintiffs in rule are without right to urge the claims of third parties. Thereupon Harry Marchiz and Nathan Reiner intervened in the rule, joined the plaintiffs therein, asserted their option to purchase the property and their readiness to accept the title and to pay the stipulated price therefor, in cash, upon delivery of the title to them. Other pleas were filed which we need not mention.

The rule was tried, and judgment was rendered making the rule absolute and ordering the executor to sell the property to Harry Marchiz and Nathan Reiner for the sum of $50,000, cash, and as provided in the lease and option annexed to the rule. The executor appealed from the judgment. It may be said here that the judgment in the Succession of Gilmore, 154 La. 105, 97 So. 330, is res judicata, not only as to the ratification of the lease by Jacobs to Marchiz and Reiner and of the recognition of the rights of the lessees, under the option granted to them in that lease, but also as to the right of the owners to partition the property by licitation. This necessarily means that the property may be sold at public auction or in any agreed manner for the purpose of effecting a partition, but, in whatever manner sold, it must be sold subject to lessees' said option.

The executor is endeavoring to avoid the effect of the judgment, in so far as it decrees the validity of the lease and the rights of the lessees under the option, and to invoke it only to the extent that it decrees the right of the owners to partition the property by licitation. His position is as untenable as that taken by the late Mr. Gilmore in the former case, viz. attacking the lease but demanding the fruits of it. It makes no difference with what freedom from the restraints of the daughters and son-in-law of the late Mr. Gilmore the executor may act. These parties are not the lessees of the property, and they have no option to buy it. No matter what the plaintiffs in rule might do, no act of theirs, or of the executor, can, since the judgment in the Succession of Gilmore, supra, became final, affect the rights of Marchiz and Reiner, under their option to buy the property.

The only question in the case is whether or not the executor represents a sufficient interest in the property to prevent the surviving daughters and son-in-law from tendering the title to the holders of the option before the expiration of the lease. The executor, under the circumstances, can be interested only in paying the debts of the succession and in discharging the legacies. The legatees were not bequeathed property, but each bequest was for a fixed sum of money. As there is no other property or funds belonging to the succession, the bequests must be discharged out of the remaining one-third of one-half of the proceeds realized from the sale of the leased property, after the debts of the succession are paid. In our opinion, this is a sufficient interest to support the executor in declining to accede to the demands of the plaintiffs in rule and acquiesce in tendering title to the property to the holders of the option before the expiration of the lease. This conclusion dispenses with the necessity of passing upon the right of the lessees to intervene in the rule and to assert their rights under the option in that form of proceeding.

For these reasons the judgment appealed from is avoided, and it is now decreed that J. C. Gilmore, testamentary executor of the succession of Hugh Gilmore, do sell the property Nos. 222-224 South Rampart street, in the city of New Orleans, subject to the option of Harry Marchiz and Nathan Reiner, which is granted to them in the lease and option annexed to the rule herein; costs of this appeal to be paid by appellees.

O'NIELL, C. J., is of the opinion that the judgment should be affirmed.